THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHAD CAMPBELL, Appellant. [602 NYS2d 282] —Judgment unanimously affirmed. Memorandum: Fifteen-year-old Cindy Lewis and the seventeen-month-old infant she was babysitting had been missing since 2:00 P.M. on August 1, 1990. Their bodies were found the next afternoon in the woods behind Palmyra Middle School. Both died of multiple knife wounds.

The evidence at trial amply supports the jury's determination that defendant, Chad Campbell, intentionally murdered both victims. At 2:15 P.M. on August 1, 1990, three teenage boys, who were playing tennis behind the school, saw defendant walking alone toward the back of the school grounds. Less than a minute later they saw Cindy Lewis walking in the same direction pushing a baby stroller. Defendant confessed to

the police, to his parents in the presence of the police, and to psychiatrists and a psychologist retained by the prosecution and the defense, that he had killed Cindy Lewis and the baby. Three teenage girls testified that, shortly before August 1, defendant had telephoned each of them and had asked them to meet him behind the school grounds and they had declined to go. Forensic evidence implicated defendant in the killings. A hair found on defendant's sock matched the baby's hair. The DNA of sperm found in Cindy Lewis' vagina matched defendant's DNA. A knife with blood on the blade was found where defendant said that he had thrown it. The DNA of the blood on the knife matched the DNA of blood from Cindy Lewis. Blood found on defendant's sneakers and shorts matched the blood of Cindy Lewis. Most damaging to the defense was a letter written by defendant to his former girlfriend in April 1991 while defendant was incarcerated in which he wrote: "Everybody wants to hear that Chad Campbell didn't do it. When I first came here, I promised myself that I wasn't going to lie. Well, I did it. I wish it had never happened. When Mike Hutchinson died, I could have blamed it all on him, but I'm not going to lie to get out of this one."

In spite of that overwhelming proof of defendant's guilt, it was defense counsel's theory at trial that Michael Hutchinson, not defendant, committed the murders. Hutchinson died after the victims were killed and before defendant's trial. Defendant's main argument on appeal is that the trial court erred in excluding testimony, offered as a declaration against penal interest, that Michael Hutchinson had stated, without giving any details, that he had killed the victims. The trial court properly determined that the hearsay statement of Michael Hutchinson was not admissible as a declaration against penal interest. There was insufficient evidence to satisfy the last two prerequisites to admissibility set forth in *People v Settles* (46 NY2d 154, 167) that: "third, the declarant must have competent knowledge of the facts underlying the statement; and, fourth, and most important, supporting circumstances independent of the statement itself must be present to attest to its trustworthiness and reliability".

We find no evidence in the record that Michael Hutchinson had any knowledge of the facts underlying the statement. The statement itself lacked any details and we reject defendant's contention that the interview of Hutchinson by the police indicates that he had knowledge of the murders.

Also, there are no supporting circumstances independent of the statement itself to attest to its trustworthiness and relia-

bility. "Only when there is other evidence tending to show that the declarant * * * actually committed a crime, may a declaration against penal interest be said to display the degree of reliability sufficient to overcome the dangers of admitting hearsay evidence" *(People v Settles, supra,* at 169). The determination whether there was sufficient supportive evidence of a declaration against penal interest "is entrusted to the sound judgment of the trial court, which is aptly suited to weigh the circumstances surrounding the declaration and the evidence used to bolster its reliability" *(People v Settles, supra,* at 169). Under all of the circumstances, we conclude that the court properly exercised its discretion.

There was no evidence tending to show that Hutchinson committed the murders. There was no testimony placing him at or near the scene of the crime (in fact, testimony concerning his whereabouts at the time of the commission of the crimes precluded his presence at the scene); and there was no proof of possession of the instruments used to commit the crime *(see, People v Settles, supra,* at 169). We find no other evidence in the record establishing "a reasonable possibility that the statement might be true" *(People v Settles, supra,* at 169-170).

The only indication in the record that Hutchinson may have committed the murders came from the hearsay statements made by defendant to the psychologist retained by the defense. The psychologist interviewed defendant on four separate occasions. On the first three occasions, defendant insisted that he alone had committed the murders. Having decided that defendant's statement to him did not make sense, the psychologist interviewed defendant for a fourth time a few days before the trial. At that interview defendant said that Hutchinson, through Satanic threats against defendant's cousins, forced defendant to telephone Cindy Lewis and invite her to meet him behind the school. Defendant said that, after he met Cindy Lewis behind the school, he raped her while Hutchinson knifed the baby and, at Hutchinson's command, he pushed Cindy toward Hutchinson, who immediately stabbed her to death. That testimony by the psychologist was offered to support his opinion that the statement defendant gave to the police was involuntarily given. As noted in McCormick on Evidence § 324.3 (4th ed), hearsay testimony given by experts is admissible for the limited purpose of informing the jury of the basis of the expert's opinion and not for the truth of the matters related. Thus, defendant cannot rely upon the

testimony of his expert witness as tending to show that Hutchinson committed the crimes.

We reject defendant's contention that defendant's statement to the police was involuntarily given and should have been suppressed. The testimony at the suppression hearing fully supports the court's determination that the statement was voluntarily given.

We have reviewed the other issues raised by defendant on appeal and we conclude that they lack merit. (Appeal from Judgment of Wayne County Court, Strobridge, J.—Murder, 2nd Degree.) Present—Pine, J. P., Fallon, Boomer, Davis and Boehm, JJ.