OPINION OF THE COURT
McCarthy, J.P.
Appeal from a judgment of the Supreme Court (LaBuda, J.), entered May 14, 2015 in Sullivan County, which granted petitioner’s application, in a proceeding pursuant to CPLR article 78 to, among other things, annul a determination of respondent Board of Parole denying petitioner’s request for parole release.
When petitioner was 16 years old, he strangled to death his 14-year-old girlfriend and then hid her body. Thereafter, petitioner actively lied about his responsibility for the crime for several months. Approximately two years after the crime, the victim’s body was discovered. Petitioner was eventually arrested and then tried and convicted of murder in the second degree. He was thereafter sentenced, in 1979, to a prison term of 22 years to life.
*36 Petitioner has been denied parole release nine times since becoming eligible for it in 2000. At the time of his March 2014 parole release hearing, at issue on this appeal, petitioner was 54 years old and had served 36 years of his sentence. Respondent Board of Parole denied petitioner’s request for parole release upon the conclusion that, among other things, granting his release “would so deprecate the seriousness of [his] offense as to undermine respect for the law” and imposed a 24-month hold to be followed by another appearance. When the Board’s Appeals Unit failed to rule on petitioner’s administrative appeal within four months (see 9 NYCRR 8006.4 [c]), petitioner commenced this proceeding challenging the Board’s determination, requesting either his immediate release or a de novo parole release hearing. Supreme Court, among other things, annulled the determination, remanded for a de novo parole release hearing and precluded one of the Board’s commissioners from participating in any future parole proceedings involving petitioner.[1]
We agree with petitioner that, as a person serving a sentence for a crime committed as a juvenile, petitioner has a substantive constitutional right not to be punished with a life sentence if the crime reflects transient immaturity and that petitioner was denied his constitutional right to a meaningful opportunity for release when the Board failed to consider the significance of petitioner’s youth and its attendant circumstances at the time of the commission of the crime. The Board, as the entity charged with determining whether petitioner will serve a life sentence, was required to consider the significance of petitioner’s youth and its attendant circumstances at the time of the commission of the crime before making a parole determination. That consideration is the minimal procedural requirement necessary to ensure the substantive Eighth Amendment protections set forth in Graham v Florida (560 US 48 [2010]), Miller v Alabama (567 US —, 132 S Ct 2455 [2012]) and Montgomery v Louisiana (577 US —, 136 S Ct 718 [2016]).
For the purposes of sentencing, “children are constitutionally different from adults” (Montgomery v Louisiana, 577 US at —, 136 S Ct at 733 [internal quotation marks and citation omitted]; see Miller v Alabama, 567 US at —, 132 S Ct at 2458). This difference stems from three primary distinctions:
*37 “First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. Second, children are more vulnerable to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child’s character is not as well formed as an adult’s; his [or her] traits are less fixed and his [or her] actions less likely to be evidence of irretrievable depravity” (Montgomery v Louisiana, 577 US at —, 136 S Ct at 733 [internal quotation marks and citations omitted]; see Miller v Alabama, 567 US at —, 132 S Ct at 2464; Roper v Simmons, 543 US 551, 569-570 [2005]).
For these reasons, primarily, “the case for retribution is not as strong with a minor as with an adult” and “[t]he need for incapacitation is lessened, too, because ordinary adolescent development diminishes the likelihood that a juvenile offender forever will be a danger to society” (Montgomery v Louisiana, 577 US at —, 136 S Ct at 733 [internal quotation marks and citations omitted]; see Miller v Alabama, 567 US at —, 132 S Ct at 2465; Graham v Florida, 560 US at 71-72). Consistent with these conclusions, the Supreme Court of the United States held in Miller v Alabama that mandatory sentences of life without the possibility of parole for juvenile homicide offenders violate the Eighth Amendment’s prohibition on cruel and unusual punishment (567 US at —, 132 S Ct at 2460). As that Court has since clarified, a substantive rule announced in Miller is “that life without parole is an excessive sentence for children whose crimes reflect transient immaturity” (Montgomery v Louisiana, 577 US at —, 136 S Ct at 735). The Court considered this guarantee in the context of the sentencing stage, and it found that the “procedural requirement necessary to implement [this] substantive guarantee” is “[a] hearing where youth and its attendant characteristics are considered” for the purpose of “separat[ing] those juveniles who may be sentenced to life without parole from those who may not” (577 US at —, 136 S Ct at 734-735 [internal quotation marks and citation omitted]; see Miller v Alabama, 567 US at —, 132 S Ct at 2471).
In addressing whether a juvenile’s sentence must include the possibility of parole, the Court has given some guidance as to *38 the promise that a parole determination represents. The Court has clarified that the relevant distinction between a constitutional and unconstitutional life sentence for a juvenile homicide offender — for all but the rare case of an irreparably corrupt juvenile — is that a constitutional sentence guarantees, at some point, a “meaningful opportunity to obtain release” (Graham, v Florida, 560 US at 75; see Montgomery v Louisiana, 577 US at —, 136 S Ct at 736).[2] As the Court further made clear, it did not see its role, upon reaching this conclusion, to prescribe a particular opportunity for release that states must afford; instead, the Court found that “[i]t is for the [s]tate, in the first instance, to explore the means and mechanisms for compliance” (Graham v Florida, 560 US at 75). Although the Court has not specifically reviewed a case regarding a parole determination for a juvenile homicide offender, it is axiomatic that such an offender still has a substantive constitutional right not to be punished with life imprisonment for a crime “reflecting] transient immaturity” (Montgomery v Louisiana, 577 US at —, 136 S Ct at 735). Further, the Court has made abundantly clear that the “foundational principle” of the Eighth Amendment jurisprudence regarding punishment for juveniles is “that [the] imposition of a [s]tate’s most severe penalties on juvenile offenders cannot proceed as though they were not children” (Miller v Alabama, 567 US at —, 132 S Ct at 2466). A parole board is no more entitled to subject an offender to the penalty of life in prison in contravention of this rule than is a legislature or a sentencing court.
With this in mind, we reach petitioner’s contention that he was denied a meaningful opportunity for release.[3] The Court has found that, at the sentencing stage, a defendant who committed a crime as a juvenile is procedurally entitled to a “hearing where ‘youth and its attendant characteristics’ are consid *39 ered”[4] in order to separate out those who can be punished by a life in prison from those who cannot (Montgomery v Louisiana, 577 US at —, 136 S Ct at 735, quoting Miller v Alabama, 567 US at —, 132 S Ct at 2460). We agree with petitioner that an analogous procedural requirement is necessary at the parole release hearing stage. For those persons convicted of crimes committed as juveniles who, but for a favorable parole determination will be punished by life in prison, the Board must consider youth and its attendant characteristics in relationship to the commission of the crime at issue (see Hayden v Keller, 2015 WL 5773634, *8-10, 2015 US Dist LEXIS 134426, *22-29 [ED NC, Sept. 25, 2015, No. 5:10-CT-3123 (BO)]; Greiman v Hodges, 79 F Supp 3d 933, 944 [SD Iowa 2015]).[5]
Here, neither the hearing transcript nor the Board’s written determination[6] reflects that the Board met its constitutional obligation to consider petitioner’s youth and its attendant *40 characteristics in relationship to the commission of the crime.[7] The Eighth Amendment “requires a sentencer to consider a juvenile offender’s youth and attendant characteristics” before punishing an offender with a life in prison (Montgomery v Louisiana, 577 US at —, 136 S Ct at 734 [emphasis added]). Because petitioner was entitled to a meaningful opportunity for release in which his youth, and its attendant characteristics, were considered by the Board, we agree with Supreme Court that petitioner is entitled to a de novo parole release hearing.
Supreme Court, however, erred here in precluding one of the Board’s commissioners from participating in any future parole proceeding involving petitioner.[8] Petitioner did not request such relief, and the record provides no basis for a conclusion that the commissioner at issue is either unqualified or biased. The remaining arguments have been considered and are either academic or without merit.

. Contrary to petitioner’s argument, Supreme Court’s decision and order constituted an appealable final judgment (see Matter of Duffy v New York State Dept. of Corr. & Community Supervision, 132 AD3d 1207, 1208 n [2015]).

. Contrary to the dissent’s suggestion, we do not contend that a sentence such as petitioner’s “is the functional equivalent of being sentenced to life in prison without the possibility of parole,” except where, as here, the Board deprives an offender of a meaningful opportunity for release. We understand the dissent to agree that petitioner’s sentence promised him a meaningful opportunity to obtain release, and thus we perceive no disagreement on that point.

. Petitioner falls within the relevant class of persons due to the fact that he was sentenced for a crime that he committed as a juvenile and that, but for a favorable parole determination, he will spend the remainder of his life in prison. “[T]he remote possibility of [executive clemency] does not mitigate the harshness of th[is] sentence” for Eighth Amendment purposes (Graham v Florida, 560 US at 70).

. The Court did not merely require an opportunity for a defendant to argue that his or her youth mattered; “Miller requires a sentencer to consider a juvenile offender’s youth and attendant characteristics” before punishing a defendant with a life in prison (Montgomery v Louisiana, 577 US at —, 136 S Ct at 734 [emphasis added]). Even if the Court had not made this clear, a rule satisfied by a finding that a petitioner had an opportunity to advocate to the Board that it should consider his or her youth at the time of the crime would be particularly inappropriate in the parole release determination setting. The Court of Appeals has determined that potential parolees are not entitled to an adversarial-type parole release hearing and, relatedly, concluded that they have no right to be represented by counsel at such a hearing (see Matter of Briguglio v New York State Bd. of Parole, 24 NY2d 21, 29 [1969]). The dissent apparently confuses our conclusion here — that we will not find the Board to have considered petitioner’s youth at the time of the crime based on the mere fact that petitioner argued that his youth should be considered — with a claim that petitioner need not raise factors before the Board. As that is not a claim that we make — and the issue is irrevelant considering the fact that petitioner did raise the issue of his youth before the Board — we see no need to further address the dissent’s contention in this regard.

. This format is consistent with Montgomery v Louisiana, which clarifies that a state “may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them” (577 US at —, 136 S Ct at 736).

. We are not persuaded by the fact that our dissenting colleagues were able to find an example in a hearing transcript from 2000 — eight parole hearings before the one that is actually at issue — that evinces that at least one then-Board member considered petitioner’s development at the time of the crime in reaching a parole determination that took place 14 years prior to this determination.

. The one incidental remark by a commissioner indicating that petitioner must have been particularly “cold and callous” for someone his age due to the fact that he did not confess to the authorities after the commission of his crime does not alter this conclusion. The Eighth Amendment required inquiry into and careful consideration of whether the “crime reflects transient immaturity” (Montgomery v Louisiana, 577 US at —, 136 S Ct at 735). Whether a juvenile confessed to his or her crime is not relevant to that inquiry. Moreover, the Court has made clear that the aspect of youth that is relevant is “how children are different [from adults], and how these differences counsel against” treating them as though they were the same as adults (577 US at —, 136 S Ct at 733 [internal quotation marks omitted]). The commissioner’s conclusion that a child who does not confess to a crime is more morally culpable than an average child — who the commissioner apparently believed would have confessed — did not follow or constitute an inquiry regarding petitioner’s maturation, or lack thereof, since the time of the crime and in relationship to becoming an adult (see Hayden v Keller, 2015 WL 5773634, *3, *10, 2015 US Dist LEXIS 134426, *6-9, *28-29 [parole scheme that only considers youth in a manner irrevelant to the Eighth Amendment fails to comply with that amendment]).

. Notably, respondents do not challenge the portion of Supreme Court’s judgment dictating that the commissioners who sat on this parole proceeding not sit on petitioner’s de novo hearing. As respondents inform us in their brief, the Board has an internal procedure that would dictate the same result on this issue regardless of Supreme Court’s judgment.