Matter of Allen v Stanford (2018 NY Slip Op 03888)





Matter of Allen v Stanford


2018 NY Slip Op 03888


Decided on May 31, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 31, 2018

525954

[*1]In the Matter of MICHAEL ALLEN, Appellant,
v
TINA M. STANFORD, as Chair of the Board of Parole, Respondent.

Calendar Date: April 3, 2018

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Pritzker, JJ.


Michael Allen, Attica, appellant pro se.
Barbara D. Underwood, Attorney General, Albany (Frederick A. Brodie of counsel), for respondent.


Pritzker, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (Melkonian, J.), entered October 24, 2017 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of the Board of Parole denying petitioner's request for parole release.
Based upon serious criminal conduct in the months before his eighteenth birthday, petitioner was convicted of murder in the second degree, criminal possession of a weapon in the second degree, escape in the first degree, attempted murder in the second degree and rape in the first degree. Petitioner was sentenced to an aggregate term of 27&frac13; years to life in prison. In November 2016, when he was 44 years old, petitioner made his
first appearance before the Board of Parole seeking parole release. Following a hearing, the Board denied his request and ordered him held for an additional 24 months. The denial was later upheld on administrative appeal, which was challenged in this CPLR article 78 proceeding. Following joinder of issue, Supreme Court dismissed the petition, and this appeal ensued.
We affirm. Executive Law article 12-B sets forth the procedures governing parole. Pursuant to Executive Law § 259-i (5), the scope of our review in these matters is narrow, as any action taken by the Board pursuant to this article is "deemed a judicial function and shall not be reviewable if done in accordance with law." Thus, "[j]udicial intervention is warranted only when there is a showing of irrationality bordering on impropriety" (Matter of Silmon v Travis, 95 [*2]NY2d 470, 476 [2000] [internal quotation marks and citation omitted]).
Executive Law § 259-i (2) (c) sets forth the factors that the Board must consider when making discretionary parole release determinations, including the inmate's institutional record, the seriousness of the offense, the recommendations of the sentencing court and the District Attorney, the presentence probation report and mitigating or aggravating factors to the crime, among others. The Board is not required to give equal weight to each statutory factor (see Matter of Wan Zhang v Travis, 10 AD3d 828, 829 [2004]; Matter of Geames v Travis, 284 AD2d 843, 843 [2001], appeal dismissed 97 NY2d 639 [2001]). However, particularly relevant here, "[f]or those persons convicted of crimes committed as juveniles who, but for a favorable parole determination will be punished by life in prison, the Board must consider youth and its attendant characteristics in relationship to the commission of the crime[s] at issue" (Matter of Hawkins v New York State Dept. of Corr. & Community Supervision, 140 AD3d 34, 39 [2016]).
Contrary to petitioner's contentions, review of the record leads us to the conclusion that the Board did consider the necessary statutory factors, as well as petitioner's youth at the time of the crimes. Specifically, at the hearing, the Board explored the facts underlying petitioner's crimes in detail and his insight into his crimes, as well as his release plans, prior criminal record, educational and institutional achievements, lengthy prison disciplinary record, sentencing minutes, COMPAS Risk and Needs Assessment instrument and numerous letters of support. Also, the hearing transcript demonstrates that petitioner's youth at the time that he committed the crimes was adequately explored. At the outset of the hearing, the Board asked petitioner his age when he committed the crimes, to which he responded that he was 17 years old. Petitioner then cited peer pressure and his desire for acceptance as driving forces behind his crimes. Exploring this further, the Board asked petitioner: "Now that you've grown a number of years . . . what's your assessment of yourself at that time, impulsive?" Petitioner stated that he considered himself to be impulsive and "weak-minded" when he committed his crimes. The Board acknowledged that teenagers could be impulsive and further inquired as to what contributed to petitioner's behavior, leading petitioner to give more insight into his circumstances at the time of his crimes. The Board also asked petitioner to compare his thought process at the time of his crimes to his current thought process. Although the Board's written decision denying parole release contains only one specific reference to petitioner's age at the time of the crimes, the decision also references that the Board considered petitioner's parole packet, which includes a personal statement wherein he recognizes that, at the time of the crimes, he was immature, made poor choices and that his mind was not fully enough developed to truly understand the consequences of his behavior. The Board also explicitly stated in its decision that it considered the letters of support, many of which reference petitioner's age and immaturity at the time of his crimes.
Although the Board explored petitioner's youth at the time of the crimes, ultimately it placed greater emphasis on other factors, including the seriousness of petitioner's crimes and his history of unlawful and violent conduct, as it was entitled to do (see Matter of Hamilton v New York State Div. of Parole, 119 AD3d 1268, 1274 [2014]). As the Board placed such emphasis on these factors, we would be remiss in not thoroughly addressing them in determining whether the Board's decision rises to the level of "irrationality bordering on impropriety" (Matter of Silmon v Travis, 95 NY2d at 476 [internal quotation marks and citation omitted]).
In 1989, approximately 15 weeks shy of his eighteenth birthday, petitioner and an accomplice approached a car that was stopped at a red light. Petitioner displayed a hand gun and attempted to rob the driver, who sped off. Petitioner followed and, when the vehicle was slowed in traffic, he and his accomplice opened fire and struck the driver causing him to crash into a pole. Ultimately, the driver was hospitalized for three months due to gunshot wounds to his face, [*3]chest and abdomen. Approximately four weeks later, petitioner was riding with friends in a car when he stated that he wanted to try out his new 9 millimeter semiautomatic pistol. Petitioner had his friends stop the car, at which time he approached a random stranger, who was 17 years old, shot him five times, including twice in the head, and ran away, leaving the victim to die in the street. One day later, petitioner was a passenger in a cab when he saw an 18-year-old woman walking home and told the driver to stop. Petitioner got out of the cab and displayed three handguns that he had in a shoulder holster, ordering the woman to get into the cab. Petitioner then directed the cab driver to take them to a residential address, where he forced the victim out of the car, brought her inside, made her undress and raped her. According to the victim, petitioner had done the same thing a month earlier. Approximately 10 days later, petitioner was taken into custody. Petitioner subsequently escaped, but was later apprehended.
In denying parole release, the Board also cited petitioner's failure to complete all of his recommended programming,[FN1] as well as his poor compliance with Department of Corrections and Community Supervision rules. The record reveals that petitioner has 36 tier II and III prison disciplinary violations, the most recent of which occurred approximately one year prior to his appearance before the Board. A review of these violations reveals multiple instances of violence and at least two instances involving a weapon. In an attempt to diminish the seriousness of these disciplinary violations, petitioner likens his case to Matter of Hawthorne v Stanford (135 AD3d 1036 [2016]), where we reversed the Board's determination that relied upon prison disciplinary violations in denying that petitioner parole release. There, the petitioner, who was diagnosed with a serious psychiatric disorder, was taken off his medication by prison doctors, leading to a psychotic breakdown rendering him unable to comply with prison regulations at the time that his disciplinary infractions occurred (id. at 1041). Here, in support of his contention, petitioner has submitted Office of Mental Health records showing that he self-referred for mental health screenings beginning in 2013. These screenings failed to yield any evidence of psychotic symptoms, nor did they result in petitioner receiving active mental health services, negating the etiology underpinning the disciplinary violations in Hawthorne.
In support of his claim that the Board did not adequately consider his youth, petitioner relies on Matter of Hawkins v New York State Dept. of Corr. & Community Supervision (140 AD3d 34 [2016], supra), in which we held that the Board failed to meet its constitutional obligation under the Eighth Amendment when it denied the petitioner parole release without considering youth and its attendant characteristics in relationship to the crimes at issue. We find this matter distinguishable from that authority, both legally and factually. Hawkins is grounded upon the holdings in a series of cases from the Supreme Court of the United States that interpreted the application of the Eighth Amendment to cases of juvenile offenders and formed the substantive rule "that life without parole is an excessive sentence for children whose crimes reflect transient immaturity" (Montgomery v Louisiana, 577 US ___, ___, 136 S Ct 718, 735 [2016]; see Miller v Alabama, 567 US 460 [2012]; Graham v Florida, 560 US 48 [2010]).
The petitioner in Hawkins, who committed murder at the age of 16, had been denied parole nine times and was 54 years old. As such, our Court was faced with multiple parole denials, potentially resulting in life without parole, and a record reflecting "irrationality bordering on impropriety" (Matter of Hawkins v New York State Dept. of Corr. & Community Supervision, 140 AD3d at 40 [internal quotation marks and citations omitted] [Garry, J., [*4]concurring]), ostensibly creating a de facto violation of the Eighth Amendment. Here, there can be no legitimate de facto argument advanced, as petitioner has only once appeared before the Board and, as noted, the Board properly considered the necessary statutory factors, as well as petitioner's youth.
Aside from this important legal distinction, Hawkins is also factually distinguishable relative to the factors examined by the Board that led to the denial of parole. In stark contrast to petitioner here, the petitioner in Hawkins "consistently demonstrated exemplary conduct within the prison setting[,] . . . [having] a minimal disciplinary history, having not been charged with any offense of any nature [in 16 years] . . . [and having] never been charged with an infraction involving either violence or drug use in the entire course of his incarceration" (id. at 41 [Garry, J., concurring]). Further, the petitioner in Hawkins also had "an excellent history of program participation" (id. [Garry, J., concurring]). Finally, as noted herein, the type of crimes committed by petitioner here are diametrically distinct from the one crime of passion that was before us in Hawkins. Among other crimes, petitioner committed a rape the day after he shot and killed a 17-year-old random stranger so that he could try out his new semiautomatic pistol. Although the underlying facts in Hawkins led to the determination that the petitioner had not received a "meaningful opportunity for release" (id. at 40), we find that the factual landscape in petitioner's case is distinctly different.
A thorough review of the Board's decision evinces that all necessary statutory factors, as well as petitioner's youth and its attendant characteristics, were considered. Although the Board assigned greater weight to the seriousness of petitioner's crimes, his history of violence, his failure to complete recommended programming and his lengthy prison disciplinary record, we find that the ultimate determination is rational and, therefore, we will not disturb it (see Matter of Hamilton v New York State Div. of Parole, 119 AD3d at 1274).
Garry, P.J., Egan Jr., Lynch and Mulvey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: We do note that most, but not all, of petitioner's recommended programming was complete at the time that he appeared before the Board.