Matter of Rivera v Stanford (2019 NY Slip Op 03601)





Matter of Rivera v Stanford


2019 NY Slip Op 03601


Decided on May 8, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 8, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
ROBERT J. MILLER
BETSY BARROS
ANGELA G. IANNACCI, JJ.


2018-00017
 (Index No. 50638/17)

[*1]In the Matter of Richard Rivera, appellant, 
v
Tina M. Stanford, etc., respondent.


Janet E. Sabel, New York, NY, and Orrick, Herrington & Sutcliffe LLP, New York, NY (Alex V. Chachkes and Christopher J. Cariello of counsel), for appellant (one brief filed).
Letitia James, Attorney General, New York, NY (Steven C. Wu and Caroline A. Olsen of counsel), for respondent.



DECISION & ORDER
In a proceeding pursuant to CPLR article 78, inter alia, to review a determination of the New York State Board of Parole dated September 14, 2016, which, after an interview held pursuant to Executive Law § 259-i(2)(a)(i), denied the petitioner's application to be released on parole, the petitioner appeals from a judgment of the Supreme Court, Dutchess County (Denise M. Watson, J.), dated November 27, 2017. The judgment denied the petition and dismissed the proceeding.
ORDERED that the judgment is reversed, on the law, without costs or disbursements, the petition is granted, the determination is annulled, and the matter is remitted to the New York State Board of Parole for a de novo interview pursuant to Executive Law § 259-i(2)(a)(i), before a different panel, and a new determination with all convenient speed.
In 1981, the petitioner was convicted of robbery in the first degree and criminal use of a firearm in the first degree, stemming from a robbery at a bar in Queens. Subsequently, in 1982, the petitioner was convicted of two counts of murder in the second degree, four counts of attempted robbery in the first degree, criminal possession of a weapon in the second degree, and criminal use of a firearm in the second degree arising from the shooting of an off-duty police officer during an alleged attempted robbery at a different bar in Queens two weeks after the first robbery occurred. The petitioner was 16 years old when he committed the crimes underlying both the 1981 and 1982 convictions.
The petitioner was sentenced to a term of imprisonment of 5 to 15 years for the 1981 convictions. With respect to the 1982 convictions, the petitioner was sentenced to a term of imprisonment of 25 years to life. The sentences imposed for the 1982 convictions were ordered to run consecutively to the sentences for the 1981 convictions.
On September 14, 2016, the New York State Board of Parole (hereinafter the Parole Board) denied the petitioner's fourth application for parole release. At the time, the petitioner was 52 years old and had spent 36 years in prison. Thereafter, the Parole Board's Appeals Unit affirmed [*2]the September 2016 determination. The petitioner subsequently commenced this proceeding pursuant to CPLR article 78 to review the Parole Board's September 2016 determination denying his application for parole release. The Supreme Court denied the petition and dismissed the proceeding. The petitioner appeals.
At the outset, the Parole Board contends that this appeal relating to the denial of the petitioner's 2016 application for parole has been rendered moot, since the petitioner submitted a subsequent application for parole release in 2018 and appeared for a parole interview in September 2018. At that time, the defendant's subsequent application for parole release was denied. We take judicial notice of the fact that, in a decision dated April 9, 2019, the Parole Board's Appeals Unit vacated the Parole Board's denial of the petitioner's 2018 application and remanded the matter for a de novo interview. Consequently, the petitioner's challenge to the determination denying his 2016 parole application is not academic.
Judicial review of a determination of the Parole Board is narrowly circumscribed (see Executive Law § 259-i[5]; Matter of Briguglio v New York State Bd. of Parole, 24 NY2d 21, 29; Matter of Marszalek v Stanford, 152 AD3d 773, 773). Nonetheless, if an application for parole is denied, the Executive Law requires that the reason for such denial be given "in detail and not in conclusory terms" (Executive Law § 259-i[2][a][i]).
Here, the petitioner demonstrated his entitlement to a judgment setting aside the Parole Board's September 2016 determination. The Parole Board's finding that the petitioner's release was not compatible with the welfare of society based upon his disciplinary record while imprisoned is without support in the record (see Matter of Coleman v New York State Dept. of Corr. & Community Supervision, 157 AD3d 672, 673; cf. Matter of Marino v Travis, 289 AD2d 493, 493). Further, the Parole Board's terse and conclusory decision did not explain the reason for the denial in detail as required by the Executive Law (see Executive Law § 259-i[2][a]).
The Parole Board determination stated that "[o]f significant concern is [the petitioner's] poor behavior during this term." Yet, from the time of the petitioner's 2014 appearance before the Parole Board until the time of his 2016 appearance before the Parole Board, the petitioner had no disciplinary infractions. Moreover, the petitioner's only disciplinary infractions since 2011 related to failing to report an assault upon him; having excess stamps, cigarettes, and prescribed medication in his cell; and possessing contact information of a prison employee, who was his fiancé at the time of his 2016 application. While the Parole Board noted that the petitioner had incurred more than 30 disciplinary violations while imprisoned since the 1980's, the Parole Board did not discuss the history of these violations or explain how these violations, many of which were decades old, had a bearing upon its determination that the petitioner's request for release was not compatible with the welfare of society. Aside from discussing the petitioner's disciplinary history, the Parole Board focused only on the petitioner's conduct during the commission of the subject crimes (see Matter of Ramirez v Evans, 118 AD3d 707, 707). Consequently, the Parole Board's determination to deny parole release to the petitioner appears to have been solely based on the seriousness of the crimes he committed. We find such analysis, or lack thereof, to be incompatible with the Parole Board's duty.
"[A] juvenile homicide offender . . . has a substantive constitutional right not to be punished with life imprisonment for a crime reflect[ing] transient immaturity'" (Matter of Hawkins v New York State Dept. of Corr. & Community Supervision, 140 AD3d 34, 38, quoting Montgomery v Louisiana, 136 S Ct 718, 735). "[T]he foundational principle' of the Eighth Amendment jurisprudence regarding punishment for juveniles is that [the] imposition of a [s]tate's most severe penalties on juvenile offenders cannot proceed as though they were not children'" (Matter of Hawkins v New York State Dept. of Corr. & Community Supervision, 140 AD3d at 38, quoting Miller v Alabama, 567 US 460, 474). "A parole board is no more entitled to subject an offender to the penalty of life in prison in contravention of this rule than is a legislature or a sentencing court" (Matter of Hawkins v New York State Dept. of Corr. & Community Supervision, 140 AD3d at 38). Consequently, "[f]or those persons convicted of crimes committed as juveniles who, but for a favorable parole determination will be punished by life in prison, the [Parole] Board must consider [*3]youth and its attendant characteristics in relationship to the commission of the crime at issue" (id. at 39).
Here, in considering the petitioner's application for parole, the Parole Board was required to consider the fact that the petitioner was 16 years old when he committed the subject crimes and the "attendant characteristics" of his age "in relationship to the commission of the crime[s] at issue" (id.). During the interview held pursuant to Executive Law § 259-i(2)(a)(i) with respect to the petitioner's 2016 application for parole release, the Parole Board questioned the petitioner about the circumstances of the crimes underlying his convictions. With respect to the 1982 convictions, the petitioner explained that he had entered the bar with two other teenagers, put on a mask, and demanded that everyone get on the floor because it was a "stick-up." The petitioner recalled that the bar "exploded in chaos" and that he was "nervous, afraid, [and] scared" because the situation with his cohorts had become "out of [their] depth." He further recalled that he had difficulty seeing out of the mask, but that he could tell people were running around, so he again yelled for people to get on the floor, at which point somebody to his right, who had been going down to the floor, came back up and hit the petitioner in the face. The petitioner maintained that he saw a gun in that person's hand, so he "shot, squeezed the trigger twice and ran out of there." The petitioner described the shooting as a "moment of panic without thinking, without aiming . . . just a rapid thing." The petitioner stated that he did not intend to kill anyone but he realized that he "could have done things differently and produced a different outcome."
Neither the transcript of the September 2016 interview nor the Parole Board's September 2016 determination shows that the Parole Board considered the petitioner's youth at the time and "its attendant characteristics" in relationship to the crimes he committed. Instead, the record reflects that the Parole Board did not factor in the petitioner's age at the time and the impact that his age had on his decisions and actions during the commission of these crimes when it decided to deny him parole release based on "the serious nature of the instant offenses."
The Parole Board's determination stated that the petitioner's "course of conduct during the instant offenses shows [his] willingness to place the public in great danger," without referencing how that conduct related to his age at the time. While the Parole Board mentioned in passing that it noted the petitioner's "young age" at the time the crimes were committed, it failed to set forth any meaningful discussion of that issue. Instead, the Parole Board simply discounted the petitioner's youth at the time because it was "concerned that [his] poor behavior shows limited maturity and self control," referring back to the petitioner's disciplinary history.
Further, the record demonstrates that the petitioner, in fact, does not lack maturity and self-control. It shows that the petitioner has taken full responsibility for his actions. The petitioner acknowledged that his crimes were not excused by his difficult upbringing by a mother with mental health issues who was abusive and suicidal and an abusive stepfather who was addicted to heroin, all of which required the petitioner, as a very young child, to act as a parent to his seven younger siblings. Nor were his crimes excused by his cocaine addiction at the time. During his nearly four decades of imprisonment, despite having ceased attending school at the age of seven and not being able to read upon entering prison, the petitioner earned a bachelor of arts degree in philosophy and a master's degree in theology, and was working toward obtaining an additional bachelor of arts degree in sociology. Moreover, the petitioner is a member of the Inmate Grievance Review Committee, in which he mediates disputes between prisoners and correctional staff, co-founded the Prisoners AIDS Counseling and Education Program, helped establish the Hispanic Inmate Needs Task Force, was involved in developing Hudson Link for Higher Education in Prisons, and is in the process of establishing a program for older prisoners known as Fifty PLUS. In addition, he was assessed "low" for all risk factors on his COMPAS (Correctional Offender Management Profiling for Alternative Sanction) risk assessment.
Thus, the record demonstrates that in light of all of the relevant factors, including, but not limited to, the petitioner's understanding of and remorse for his crimes, his significant accomplishments, his leadership, and demonstrated maturity, notwithstanding the seriousness of the underlying offenses, the Parole Board's determination to deny the petitioner release on parole [*4]"evinced irrationality bordering on impropriety" (Matter of Goldberg v New York State Bd. of Parole, 103 AD3d 634, 634 [internal quotations marks omitted]; see Executive Law § 259-i[2][c][A]; Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 77; Matter of Coleman v New York State Dept. of Corr. & Community Supervision, 157 AD3d at 673).
Under these circumstances, we deem it appropriate to reverse the judgment that upheld the Parole Board's determination denying the petitioner's 2016 application to be released on parole and remit the matter to the Parole Board for a de novo interview before a different panel. The petitioner is entitled to a meaningful opportunity for release in which the Parole Board considers, inter alia, his youth and its attendant characteristics (see Matter of Putland v New York State Dept. of Corr. & Community Supervision, 158 AD3d 633, 634).
AUSTIN, J.P., MILLER, BARROS and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court