Matter of Campbell v Stanford (2019 NY Slip Op 04936)





Matter of Campbell v Stanford


2019 NY Slip Op 04936


Decided on June 19, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 19, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
JEFFREY A. COHEN
HECTOR D. LASALLE
FRANCESCA E. CONNOLLY, JJ.


2017-07216
 (Index No. 50465/17)

[*1]In the Matter of Chad Campbell, appellant,
v
Tina M. Stanford, etc., respondent.


Orrick, Herrington & Sutcliffe LLP, New York, NY (Alex V. Chachkes, Jacquelyn Hehir, and Rochelle F. Swartz, and Janet E. Sabel [Cynthia Conti-Cook], of counsel), for appellant.
Letitia James, Attorney General, New York, NY (Steven C. Wu and Mark S. Grube of counsel), for respondent.



DECISION & ORDER
In a proceeding pursuant to CPLR article 78 to review a determination of the New York State Board of Parole dated May 4, 2016, which, after an interview held pursuant to Executive Law § 259-i(2)(a)(i), denied the petitioner's application to be released to parole, the petitioner appeals from a judgment of the Supreme Court, Dutchess County (Maria G. Rosa, J.), dated May 15, 2017. The judgment denied the petition and dismissed the proceeding.
ORDERED that the judgment is affirmed, without costs or disbursements.
On August 1, 1990, the petitioner, then 14 years old, telephoned 15-year-old Cindy Lewis, a neighbor and schoolmate, and asked her to meet him at the middle school athletic field. Lewis arrived at the field shortly thereafter with 17-month-old Curtis Rizzo, whom she was babysitting. The petitioner confessed to the police, among others, to fatally stabbing Lewis and Rizzo and slitting their throats. In addition, the DNA of sperm recovered from Lewis's vagina matched the defendant's DNA (see People v Campbell, 197 AD2d 930, 931). On September 28, 1991, the petitioner was convicted of two counts of murder in the second degree. On February 10, 1992, the petitioner was sentenced by the Supreme Court, Wayne County, as a juvenile offender to consecutive indeterminate terms of imprisonment of nine years to life on each conviction. On appeal, the judgment was affirmed (see id. at 930).
The petitioner first became eligible for parole release in 2008, and his application was denied on August 5, 2008. Subsequent applications for parole were denied by the New York State Board of Parole (hereinafter the Parole Board) in 2010, 2012, and 2014. On May 3, 2016, the petitioner, who was then 40 years old and had been incarcerated for 25 years, appeared before the Parole Board, via video conference, in connection with his fifth parole release application interview. In support of his application, the petitioner submitted a 24-page parole packet containing, among other things, a personal statement, wherein the petitioner expressed his remorse for the crimes, and numerous letters advocating for the petitioner's release, including letters from the Bard Prison Initiative, the Fortune Society, the Osbourne Association, and the petitioner's Rising Hope instructor. The petitioner's institutional and educational record reflected that he had obtained his GED, was [*2]accepted to Bard College in 2015, and completed various programs, including, among others, Aggression Replacement Training, Alcohol and Substance Abuse Training, Sex Offender Program, Transitional Services Phases I, II, and III, and Rising Hope Post-Secondary Program in Ministry and Human Services. Furthermore, the petitioner was assessed "low" for all risk factors on his Correctional Offender Management Profiling for Alternative Sanctions risk assessment dated February 26, 2016. The petitioner's institutional record also reflected two infractions, one in 1999, and the other in 2011.
During the parole release interview, the petitioner discussed the crimes underlying his convictions, his rehabilitative efforts, his release plans, and his remorse for the crimes and the impact the crimes had on the victims, the victims' families, and the entire community. When it was noted that there was significant opposition to the petitioner's release, the petitioner reiterated that he was "extremely sorry" and that he wished he could apologize to every person affected by the crimes. The petitioner claimed that he was a changed person. One member of the Parole Board explicitly acknowledged the petitioner's remorse.
In a determination dated May 4, 2016, the Parole Board denied the petitioner's fifth application for parole release. The Parole Board found that the petitioner's crimes were heinous and caused irreparable harm to many in the community, and that the petitioner demonstrated blatant disregard for the law and the sanctity of human life. The Parole Board further found that although the petitioner expressed remorse during the interview and had completed all recommended programs, he "appear[ed]" to have a "disconnect" regarding the gravity of his actions. The Parole Board remarked that the petitioner's remorse was "shallow" and that he needed to further reflect on why he singled out this particular victim. The Parole Board stated that consideration was given to all statutory factors, including, inter alia, the petitioner's extensive rehabilitative efforts, his risk to the community, the letters of support, his age at the time of the crime, and the considerable opposition to his release. The Parole Board determined that the petitioner's release remained incompatible with the welfare of society and would so deprecate the seriousness of his crimes as to undermine respect for law.
In September 2016, the petitioner filed an administrative appeal. In a decision dated October 26, 2016, the Parole Board's determination was affirmed. Thereafter, the petitioner commenced this proceeding pursuant to CPLR article 78 to review the Parole Board's determination, arguing, inter alia, that he was denied parole, once again, based solely upon the nature of the underlying offenses. The petitioner asserted that the Parole Board failed to consider that he was only 14 years old when he committed the crimes. He also described the circumstances of his youth, including that he did not believe that he was loved by his mother, that he was in special education classes, and that he had been diagnosed with encephalitis. The petitioner contended that the Parole Board's determination was arbitrary and capricious and that it failed to explain in sufficient detail the reasons for the denial.
In a judgment dated May 15, 2017, the Supreme Court denied the petition and dismissed the proceeding. The court found that, contrary to the petitioner's contention, although "[t]he majority of the decision denying parole focuses on the crimes of conviction," the Parole Board also considered the petitioner's age at the time of the crimes. The court further noted that although the petitioner expressed his remorse in a personal statement and again during the parole release interview, the Parole Board was in the best position to assess the petitioner's credibility. The petitioner appeals.
Judicial review of a determination of the Parole Board is narrowly circumscribed (see Matter of Briguglio v New York State Bd. of Parole, 24 NY2d 21, 29; Matter of Coleman v New York State Dept. of Corr. & Community Supervision, 157 AD3d 672; Matter of Esquilin v New York State Bd. of Parole, 144 AD3d 797, 797). A Parole Board determination to deny early release may be set aside only where it evinces "irrationality bordering on impropriety" (Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 77; see Matter of Silmon v Travis, 95 NY2d 470, 476; Matter of Banks v Stanford, 159 AD3d 134, 142; Matter of LeGeros v New York State Bd. of Parole, 139 AD3d 1068, 1069). The Parole Board is required to consider the relevant statutory factors (see [*3]Executive Law § 259-i[2][c][A]), although it is not required to address each factor in its decision or accord all the factors equal weight (see Matter of King v New York State Div. of Parole, 83 NY2d 788, 791; Matter of Coleman v New York State Dept. of Corr. & Community Supervision, 157 AD3d at 672; Matter of Marszalek v Stanford, 152 AD3d 773, 773). Whether the Parole Board considered the proper factors and followed the proper guidelines should be assessed based on the written determination evaluated in the context of the parole interview transcript (see Matter of Siao-Pao v Dennison, 11 NY3d 777, 778; Matter of Jackson v Evans, 118 AD3d 701, 702).
It is true that a juvenile homicide offender "has a substantive constitutional right not to be punished with life imprisonment for a crime reflect[ing] transient immaturity'" (Matter of Hawkins v New York State Dept. of Corr. & Community Supervision, 140 AD3d 34, 38, quoting Montgomery v Louisiana, 577 US ___, ___, 136 S Ct 718, 735), and that "children who commit even heinous crimes are capable of change" (Montgomery v Louisiana, 577 US at ___, 136 S Ct at 736). Thus, for an individual convicted as a juvenile, a constitutional sentence guarantees, at some point, a "meaningful opportunity to obtain release" (Graham v Florida, 560 US 48,75).
We note that the literature in the record indicates that the effects of encephalitis could include "[a] lack of awareness and insensitivity" and a "lack of warmth and empathy." We further note that the Parole Board found that the petitioner appeared to have a "disconnect" and that his remorse was "shallow." Nevertheless, the interview record and the text of the subject determination establish that the requisite statutory factors were properly considered, and the record does not support the conclusion that the Parole Board's determination evinces irrationality bordering on impropriety. Contrary to the petitioner's contention, the Parole Board considered the petitioner's "youth and its attendant characteristics in relationship to the commission of the crime[s] at issue" (Matter of Hawkins v New York State Dept. of Corr. & Community Supervision, 140 AD3d at 39; see Matter of Allen v Stanford, 161 AD3d 1503, 1504-1505; Matter of Putland v New York State Dept. of Corr. & Community Supervision, 158 AD3d 633, 634), and did not base its determination solely upon the seriousness of the offenses (cf. Matter of Rossakis v New York State Bd. of Parole, 146 AD3d 22, 27; Matter of Ramirez v Evans, 118 AD3d 707; Matter of Gelsomino v New York State Bd. of Parole, 82 AD3d 1097, 1098). The record does not reflect that the Parole Board disproportionately relied upon community opposition to his release (see Matter of Applewhite v New York State Bd. of Parole, 167 AD3d 1380, 1381-1382). In addition, the interview transcript indicates that the Parole Board took into account a number of other factors that reflected well on the petitioner, but determined that these factors did not outweigh the factors that militated against granting parole. The Parole Board was not required to give each factor equal weight and was entitled to place greater emphasis on the severity of the petitioner's crimes (see Matter of Robinson v New York State Bd. of Parole, 162 AD3d 1450, 1451; Matter of Copeland v New York State Bd. of Parole, 154 AD3d 1157, 1158). Discretionary release may not be solely granted as a reward for exemplary conduct (see Silmon v Travis, 95 NY2d at 478).
Since the petitioner failed to sustain his burden of demonstrating that the challenged determination was irrational, we agree with the Supreme Court's determination to deny the petition and dismiss the proceeding (see Matter of Marszalek v Stanford, 152 AD3d at 773; Matter of Esquilin v New York State Bd. of Parole, 144 AD3d at 797; Matter of LeGeros v New York State Bd. of Parole, 139 AD3d at 1069; cf. Matter of Coleman v New York State Dept. of Corr. & Community Supervision, 157 AD3d at 672).
RIVERA, J.P., COHEN, LASALLE and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court